[Cite as *Thomas v. Bur. of Workers' Comp.*, 2016-Ohio-7246.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| PAMELA R. THOMAS | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NOS.  26805 and 26813 |
| | : | |
| v. | : | T.C. NO. 11CV6772 |
| | : | |
| BUREAU OF WORKERS' | : | (Civil appeal from |
| COMPENSATION, et al. | : |  Common Pleas Court) |
| | : | |
| Defendants-Appellants | : | |

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___7th___ day of _____October_____, 2016.

. . . . . . . . . .

GARY D. PLUNKETT, Atty. Reg. No. 0046805 and RACHEL D. SIEKMAN, Atty. Reg. No. 0091012, 3033 Kettering Boulevard Point West, Suite 201, Dayton, Ohio 45439
        Attorneys for Plaintiff-Appellee

LATAWNDA N. MOORE, Atty. Reg. No. 0084037, Assistant Attorney General, Workers' Compensation Section, 150 East Gay Street, 22nd Floor, Columbus, Ohio 43215
        Attorney for Defendant-Appellant, Bureau of Workers' Compensation

DAVID C. KORTE, Atty. Reg. No. 0019382 and MICHELLE D. BACH, Atty. Reg. No. 0065313 and JOSHUA R. LOUNSBURY, Atty. Reg. No. 0078175, 33 W. First Street, Suite 200, Dayton, Ohio 45402
        Attorneys for Defendant-Appellant, Dayton Public Schools

. . . . . . . . . . . .

DONOVAN, P.J.

{¶ 1} This consolidated matter is before the Court on the August 24, 2015 Notice

of Appeal of the Administrator, Bureau of Workers' Compensation ("BWC") and the

August 26, 2015 Notice of Appeal of the Dayton Public Schools ("DPS"). BWC and DPS appeal from the trial court's July 30, 2015 "Decision and Entry Granting Motion for New Trial," issued upon Pamela Thomas' motion for a new trial, filed after a November 26, 2014 jury verdict was rendered denying Thomas' participation in the BWC's fund for "left foot sprain" and "contusion of the left knee."

## I. Background

{¶ 2} The records before us present the following procedural history. Thomas, a teacher, was injured at work on September 16, 2009, when a student fell onto her left knee. Thomas applied for BWC benefits for left foot sprain and contusion of the left knee, Claim No. 09-352832, ("Claim #1"), on September 17, 2009. Her claim was allowed for contusion of the left knee on September 29, 2009. Thomas and DPS appealed to the District Hearing Officer ("DHO"), and Thomas' total claim was disallowed on December 3, 2009. The DHO found in part as follows:

It is the order of the [DHO] that Ms. Thomas' benefit application, filed on 09/17/2009, be denied.

This claim is ordered DISALLOWED.

The [DHO] finds that Ms. Thomas has not met her burden of proof. Specifically, that she has not proven by a preponderance of the evidence that she sustained an industrial injury as alleged.

The [DHO] is persuaded that an incident did occur at work involving Ms. Thomas on 09/16/2009. Specifically, that she was struck in the lower left extremity by a falling student.

The [DHO] finds that the preponderance of medical evidence in file,

however, does not support that she sustained a new industrial injury.

The initial treatment records from Dr. Lee, from the date of the incident do not include clinical/physical findings supporting the diagnosed conditions of LEFT FOOT SPRAIN and CONTUSION OF THE LEFT KNEE. On examination, Dr. Lee found on [sic] deformity, wound, swelling or discoloration of the knee. The knee was found to be mobile. Further, Dr. Lee found active range of motion of the toes and ankle. Based upon these records, the Employer's reviewing physician Dr. Wunder, concluded, in a report dated 11/10/09, that Ms. Thomas did not sustain an industrial injury.

The Hearing Officer is persuaded by the report of Dr. Wunder and by the clinical findings of Dr. Lee that no new injury occurred. * * *

{¶ 3} Thomas appealed to the Staff Hearing Officer ("SHO"), who by order dated February 2, 2010 concluded as follows:

The order of the [DHO], from the hearing dated 12/03/2009, is affirmed.

It is the order of the [SHO] that the FROI-1, filed 09/17/2009, is denied.

The claim remains DISALLOWED. The [SHO] affirms the [DHO's] conclusions that the incident described by the Injured Worker occurred as described and nevertheless the Injured Worker did not sustain a new injury from this incident.

On 09/16/2009 a student who was involved in horseplay fell on the Injured Worker's left lower extremity. The Injured Worker has a known and

substantial history of injuries to this extremity. The Injured Worker was seen on the alleged date of injury by Dr. Lee at Concentra, who found an active range of motion of the toes and ankles, the knee to be mobile, and no deformity, wound, swelling, or discoloration of the knee. Upon review of these records, Dr. Wunder, on 11/10/2009, concluded the Injured Worker did not sustain any new injury. In reliance upon Dr. Winder's report, the claim remains disallowed.

{¶ 4} Thomas appealed to the Industrial Commission of Ohio ("IC"), which ordered on February 27, 2010 that her appeal be refused. Thomas appealed to the Montgomery County Court of Common Pleas. On January 18, 2011, DPS and BWC filed "Defendants' Joint Motion in Limine" asking the court to bar any testimony or written evidence regarding the causal connection of any medical conditions other than left foot sprain and contusion of the left knee. Thomas responded to the motion, and BWC and DPS replied. Thomas dismissed her complaint on February 11, 2011. On February 17, 2011, Thomas filed a C86 motion in Claim #1 requesting an amendment to include the condition of substantial aggravation and/or acceleration of pre-existing osteoarthritis left knee. Thomas supported her motion with the deposition transcript of Dr. Jan Saunders. On February 22, 2011, the BWC advised Thomas via correspondence as follows: "We are dismissing the C86 motion filed on 02/17/2011 by the injured worker['s] representative because the industrial injury claim has been DISALLOWED per [SHO] order dated 02/02/10 & the [IC] dated 02/27/10 refused the Appeal filed 02/18/10 by the injured worker['s] representative."

{¶ 5} Thomas subsequently filed, on March 22, 2011 an application for workers'

compensation benefits for substantial aggravation and/or acceleration of pre-existing osteoarthritis, left knee, to which claim No. 09-869743 was assigned ("Claim #2"). Thomas' application was denied, and the decision of March 25, 2011 provides as follows:

There is no medical relationship between the diagnosed condition and the described injury/occupational disease.

This decision is based on:

The alleged incident has already been adjudicated & denied by the [IC].

{¶ 6} Thomas appealed to the DHO which ordered on May 26, 2011 "that the FROI-1 First Report Of An Injury, filed by the Injured Worker on 03/22/2011 is dismissed." The DHO further found as follows:

The [DHO] finds that the Injured Worker is submitting a second application for an injury that allegedly occurred on 09/16/2009. The [DHO] notes that this alleged injury generated a FROI-1 application that was administratively denied in claim 09-353832. At this hearing, the Injured Worker's representative requested that the condition of substantial aggravation of pre-existing osteoarthritis of the left knee be allowed in this claim. The [DHO] finds that this is not possible due to the doctrine of res judicata as her alleged injury of 09/16/2009 has already been adjudicated administratively. The Injured Worker's representative argued that the only jurisdiction that the court would have at this juncture for claim number 09-352832 would include a contusion of left knee and a left foot sprain. The [DHO] finds however that in the event that claim number 09-352832 is

eventually allowed, there is nothing that prevents the Injured Worker from requesting an additional condition such as the one requested at this hearing in that claim.

Therefore, the FROI-1 First Report of an Injury, filed by the Injured Worker on 03/22/2011 is dismissed.

{¶ 7} Thomas appealed to the SHO, who determined on July 22, 2011 as follows:

The [SHO] finds that this is the second injury application filed by Ms. Thomas alleging an injury occurring in the course and scope of her employment with the same Employer on 09/16/2009. Ms. Thomas' first injury application was denied and disallowed in Claim number 09-352832. By [SHO] decision, mailed 02/052010, Ms. Thomas' injury application was denied and her claim disallowed in its entirety. The [SHO's] decision was based upon the report of Dr. Wunder, dated 11/10/2009. Thereafter, Ms. Thomas filed an appeal into Common Pleas Court. The [SHO] finds that Ms. Thomas' second application alleges an injury occurring on the same date as the prior injury application and arising from the exact same set of facts. The [SHO] finds that the only difference between the two applications is that the second application seeks allowance for a "*different*" condition, as explained by legal counsel for Ms. Thomas.

The [SHO] finds that Ms. Thomas' second application is barred by the doctrine of *res judicata*. The [SHO] finds that the issue of whether or not Ms. Thomas sustained an injury in the course of and arising out of her employment on 09/16/2009 was previously adjudicated. The claim was

disallowed in its entirety by [SHO] decision dated 02/02/2010.

At hearing today, legal counsel for Ms. Thomas argued that a second application arising from the exact same set of facts is permitted pursuant to the authority *Ward v. Kroger Company* (2005) 106 Ohio St.3d 35. The [SHO] finds that the *Ward* case cited by counsel for Ms. Thomas does not stand for the proposition, as it relates to the facts of the present claim, that Ms. Thomas may file a second application for the same injury that was previously disallowed. The [SHO] finds that the Supreme Court's holding in the *Ward* case concerns "*conditions that were addressed in the Administrative order from which the appeal is taken.*" The [SHO's] decision dated 02/02/2010 disallowing Ms. Thomas' first injury application did not disallow any particular condition, but rather, disallowed her entire claim. Thus, this [SHO] does not find that the *Ward* case is not applicable to the facts of the present application [sic].

For the reasons stated above, this [SHO] finds that the [IC] lacks jurisdiction to address Ms. Thomas' second application.

{¶ 8} On September 21, 2011, Thomas filed a "Notice of Appeal" in the court of common pleas that provides that "she is appealing from the July 22, 2011 Order of the [SHO] in Claim No. 09-869743. The Commission in an Order dated August 11, 2011, refused to accept the Plaintiff's appeal." Also on September 21, 2011 Thomas filed a "Refiling of Case No. 2010 CV 02466 Pursuant to Section 2305.19 of the Ohio Rules of Civil Procedure and Complaint and Demand for Trial by Jury (Workers' Compensation Case, I.C. Claim No. 09-352832 and I.C. Claim No. 09-869743)."

**{¶ 9}** DPS answered the complaint on October 18, 2011, and BWC did so on August 19, 2011. On October 26, 2011, Thomas filed a "Motion of Plaintiff to Transfer Deposition of Dr. Saunders." Saunders' deposition was taken in Case No. 2010 CV 02466 on January 19, 2011, and Thomas asserted that the "issues before this Court are fully addressed within Dr. Saunders' deposition, as this is a re-filing of an appeal from an adverse decision to Plaintiff from the [IC] coupled with an original filing of new conditions relating to osteoarthritis, the subject of which has now been appealed to the [IC]." The court granted the motion on October 26, 2011.

**{¶ 10}** On October 27, 2011, BWC filed a "Motion to Stay Plaintiff's Motion to Transfer," which provides that this "case raises many unique legal issues and the Defendants anticipate filing substantive motions, which may in turn effect Plaintiff's motion." Also on October 27, 2011, BWC filed a "Motion for Reconsideration of Plaintiff's Motion to Transfer." On November 28, 2011 the trial court vacated its entry granting Thomas' motion to transfer, noting that "the entry was inadvertently filed before opposing counsel had an opportunity to respond to the Motion." On November 29, 2011, the trial court issued a "Final Pretrial Order," in part scheduling trial for August 27, 2012.

II. Motions to Dismiss/ for Summary Judgment

**{¶ 11}** On February 20, 2012, a "Motion of Defendant, Dayton Public Schools, to Dismiss the Appeal Relative to Claim No. 09-869743, or in the alternative, Defendant's Motion for Summary Judgment" was filed. DPS asserted that Thomas deposed her expert, Dr. Saunders, on January 19, 2011, and that in the course of the deposition, "despite the fact that the [IC] did not address any conditions other than 'left foot sprain and contusion of the left knee,' Plaintiff's counsel asked the doctor to provide a causal

relationship opinion regarding the much more serious condition 'substantial aggravation of pre-existing osteoarthritis of the left knee.' " According to DPS, the trial court "lacked jurisdiction to address the allowance of Claim #2 * * * because Claim #2 should be barred by the doctrine of *res judicata.*" Alternatively, DPS asserted that the court should deny Claim #2 as a matter of law.

{¶ 12} DPS asserted that the Industrial Commission's dismissal of Claim #2 is not appealable to the common pleas court. According to DPS, citing *Felty v. AT&T Technologies, Inc.,* 65 Ohio St.3d 234, 602 N.E.2d 1141 (1992), "the only decisions of the Industrial Commission that may be appealed to the common pleas court are those decisions that are final and resolve the injured worker's right to participate in the State Insurance Fund." DPS asserted that "the [IC's] Decisions in Claim #2 were not final decisions that granted, denied or terminated Plaintiff's right to participate in the State Insurance Fund." DPS asserted that the DHO and the SHO "dismissed the First Report of an Injury or Occupational Disease, as opposed to denying the Plaintiff's claim application." In other words, according to DPS, "at the administrative level, the hearing officers recognized that they had no jurisdiction under the statute to issue an order denying or granting Plaintiff's second claim application for the same injury allegedly sustained on September 16, 2009." DPS asserted that the trial court also lacked jurisdiction to address Thomas' appeal of Claim #2, and the appeal was subject to dismissal.

{¶ 13} DPS further noted that both "hearing officers dismissed Claim #2 based upon the doctrine of *res judicata.*" According to DPS, "the doctrine of *res judicata* bars the adjudication of a second claim when the employee had the opportunity to litigate the

same issues in her first application for benefits." DPS asserted that Claim #1 "was denied in its entirety," and that "Claim #2 is for the **exact same** alleged injury on September 16, 2009." DPS asserted that Claim #2 is accordingly "barred by the doctrine of *res judicata*." In a footnote, DPS noted that while *res judicata* generally "cannot be raised by a motion to dismiss because it must be proved with evidence outside the pleadings," herein "the evidence of the prior adjudication is contained within the pleadings, namely Plaintiff's Complaint." DPS asserted that if, "however, the Court must review evidence outside of the pleadings, Defendant requests that this portion of Defendant's Motion be converted into a Motion for Summary Judgment."

{¶ 14} DPS asserted that once "an appeal is filed with the common pleas court, the [IC] lacks subject-matter jurisdiction to reconsider its prior orders." According to DPS, once "Thomas filed her appeal of the denial of Claim #1 with the common pleas court, the [IC] no longer had jurisdiction to address further claim applications relative to Plaintiff's alleged injury on September 16, 2009." DPS argued that "in addition to lacking jurisdiction based upon *res judicata*, the Commission also lacked jurisdiction to address Claim #2 based upon the pending litigation in the common pleas court." DPS asserted in a footnote that the "voluntary dismissal of Plaintiff's Complaint does not affect the Notice of Appeal, which remains pending until the refiling of the Complaint." DPS argued that since the Industrial Commission "lacked jurisdiction to address Plaintiff's second claim application for the same alleged September 16, 2009 injury, all Orders in Claim #2 are void *ab initio*, and the Court lacks subject-matter jurisdiction over Plaintiff's appeal from same."

{¶ 15} Finally, DPS asserted that Thomas should not be permitted to circumvent

the requirements set forth in *Ward v. Kroger,* 106 Ohio St.3d 35, 2005-Ohio-3560, 830 N.E.2d 1155, which held at syllabus that the "claimant in an R.C. 4123.512 appeal may seek to participate in the Workers' Compensation Fund only for those conditions that were addressed in the administrative order from which the appeal is taken." According to DPS, Thomas' "obvious purpose in filing Claim #2 is to circumvent the requirements set forth in *Ward.*" DPS asserted that despite "the fact that the only conditions addressed by the [IC] in Claim #1 were 'left foot sprain and contusion of the left knee,' Plaintiff wants the Court to also address whether she can participate in the Workers' Compensation Fund for 'substantial aggravation and/or acceleration of pre-existing osteoarthritis left knee.' " DPS asserts that Thomas "filed a motion administratively asking the [IC] to allow the condition in Claim #1 after the claim was denied. * * * After that motion was dismissed administratively, she filed Claim #2 alleging the **same exact** September 16, 2009 injury." DPS asserts that the IC "has never addressed the merits of Plaintiff's current request for 'substantial aggravation and/or acceleration of pre-existing osteoarthritis left knee.' Every request for this condition has been dismissed by the [IC]. Plaintiff's attempt to have this condition addressed for the first time by the common pleas court is specifically prohibited by *Ward.*"

{¶ 16}  On February 23, 2012, a "Motion of Defendant, Administrator, to Dismiss the Appeal Relative to Claim No. 09-869743, or in the Alternative, Defendant's Motion for Summary Judgment Relative to Claim No. 09-869743" was filed.  BWC asserted that after the IC "denied claim 2 based on the doctrine of res judicata, Thomas filed the instant appeal.  This case improperly combines Claim 1 and Claim 2 because Claim 2 is not properly appealable under [R.C.] 4123.51.2.  Claim 2 does not concern the right to

participate and this court does not have jurisdiction over Claim 2." BWC incorporated DPS' February 20, 2012 motion into its own. BWC asserted that when applied to Claim #1, *Ward* prevents adjudication of any conditions other than left foot sprain and contusion of the left knee. According to BWC, when applied to Claim #2, *Ward* prevents the adjudication of the condition of substantial aggravation of osteoarthritis of the left knee because the commission never ruled on the condition administratively. In conclusion, BWC asserted that "Claim 1 was a final order finding that Thomas did not sustain a new industrial injury. Claim 2 is barred by res judicata. To hold otherwise would unfairly allow Thomas to circumvent established law, giving her a second bite at the apple."

{¶ 17} On March 5, 2012 Thomas filed "Plaintiff's Memorandum in Opposition to Defendants' Motions to Dismiss and Motions for Summary Judgment." Thomas asserted that Defendants "have moved for summary judgment on the basis that the claim for osteoarthritis is barred due to res judicata, notwithstanding the fact that the First Claim is still pending before this Court." Thomas asserted that the trial court should not dismiss Claim #2, as the IC issued an Order which denied the right to participate in the fund for that condition, and the court had subject matter jurisdiction over the claim.

{¶ 18} Thomas argued that she "has satisfied her burden of establishing an Order of the [IC] from which she is taking an appeal, as this issue involves the right to participate for a certain medical condition, and is not appealing an 'extent of disability' issue." Thomas asserted as follows:

> Defendants' argument that this Court does not possess jurisdiction
> to hear this appeal in the second claim must fail, as the [IC] issued an Order
> which denied the right to participate. It is irrelevant that the [IC] used "res

judicata" as the basis for the denial; in fact, because the [IC] was required to look at previous decisions it made in the history of the case, it was, necessarily, considering the merits of the claim, as res judicata is an affirmative defense. * * * Because the [IC] could not have incorrectly concluded that Plaintiff's claim was barred by the previous denial without considering the prior decision, the [IC] did, in fact, review the merits of the claim, as the Commission Orders did not refer any statutory provision or cases which concluded that the [IC] lacks jurisdiction to review a claim for a second time. Rather, the application of res judicata applies when an issue is presented to a tribunal for a second time.

A proper review of the issue finds that, had the [IC] been without jurisdiction to decide the issue, it should have simply ceased to process the claim, and issued a decision at the hearing which cited some provision of law divesting it of jurisdiction to hear the issue. The [IC's] denial of the claim on the basis of res judicata was an adjudication on the merits, since it took into account specific circumstances surrounding the claim. * * *

{¶ 19} Thomas further argued that res judicata does not bar her claim, since the previous denial involved different conditions. Thomas asserted that while "it is true that the [IC] denied Plaintiff's previous workers' compensation claim, this is not a 'prior valid judgment on the merits' because it is not a final judgment, as the claim for benefits is pending before this Court." Thomas asserted that Claim #2 "cannot be barred on the basis of res judicata under *Ward v. Kroger*, as only specific medical conditions were barred. Additionally, her claim cannot be barred on the basis of res judicata, as the

purported final judgment has not been rendered by the Court."

{¶ 20} Finally, Thomas asserted as follows:

Ohio law is clear in this regard: the denial of a workers' compensation claim is limited to the conditions which have been denied by the [IC].   It is not enough to claim that the claim has been denied, and therefore, remains denied for all conditions.

Using Defendants' reasoning, if a denial of a workers' compensation claim <u>can</u> operate as a denial of all conditions, whether alleged or not, then an appeal filed pursuant to R.C. 4123.512 may involve all conditions – otherwise Plaintiff would have no opportunity for judicial review for some conditions.   This is illogical.   Because *Ward v. Kroger* limits judicial review to only those conditions raised administratively, then Plaintiff is able to raise only those conditions in this Court that were denied administratively.   It does not matter that Plaintiff "could have brought" the osteoarthritis claim administratively in the First Claim; the Plaintiff brought them in the Second Claim.

DPS and BWC replied to Thomas' opposing memorandum on March 12, 2012.

### III. Decision on Defendants' Motions

{¶ 21} On July 10, 2012, the trial court issued a "Decision, Order and Entry Sustaining Motion of Defendant, Dayton Public Schools, to Dismiss the Appeal Relative to Claim No. 09-869743, or in the alternative, Defendant's Motion for Summary Judgment and Sustaining the Motion of Defendant, Administrator, to Dismiss the Appeal Relative to Claim No. 09-869743, or in the alternative, Defendant's Motion for Summary Judgment

Relative to Claim No. 09-869743." Under a section entitled "A. Motion to Dismiss – Civil Rule 12(B)(1)," the court determined as follows:

Defendants argue that the [IC's] dismissal of [Claim #2] was not a final decision that granted, denied, or terminated Plaintiff's right to participate in the fund and that therefore this Court does not have jurisdiction. In [Claim #2], the [IC] did not make a determination as to granting, denying or terminating Plaintiff's right to participate. Rather, the [IC] determined that they did not have jurisdiction to make such a decision in [Claim #2] because that decision had already been made in [Claim #1]. Similarly, Defendants' [sic] argue that because the decision made in [Claim #2] was not a determination of Plaintiff's right to participate in the fund this Court does not have jurisdiction to hear an appeal. This Court agrees.

{¶ 22} Under a heading entitled "B. Res Judicata," the trial court first noted that Claim #1 was "initially allowed, then disallowed by both the" SHO and the DHO, "then an appeal was refused by" the I.C. The court noted that Thomas then appealed to the court of common pleas in case 2010 CV 02466, and that Thomas voluntarily dismissed 2010 CV 02466. The court noted that Thomas filed Claim #2, "alleging the same injuries from the September 2009 incident as well as 'substantial aggravation and/or acceleration of pre-existing osteoarthritis left knee.' " The court noted that Claim #2 "was refused by the BWC because a determination of Plaintiff's right to participate in the fund based on her claimed injuries of September 2009 had already been made in relation to" Claim #1. The court noted that Thomas unsuccessfully appealed the refusal of Claim #2 to a SHO, a DHO and the IC, and that Thomas "then brought her appeal to this court, case number

2011 CV 6772, the present case." The court concluded that res judicata bars Thomas from "taking a second bite of the apple by filing a second claim with the BWC claiming injuries from the same incident that was alleged in the initial claim."

{¶ 23} Finally, under a heading entitled "C. *Ward v. Kroger*," the court concluded as follows:

> * * * Defendants contend that Plaintiff cannot be permitted to file a second claim in order to skirt the requirements of *Ward*. Plaintiff's claim for "substantial aggravation and/or acceleration of pre-existing osteoarthritis left knee" was not part of [Claim #1]. Defendants argue that the [IC] has yet to consider whether Plaintiff can participate in the fund for "substantial aggravation and/or acceleration of pre-existing osteoarthritis left knee," and that therefore it is improper for this Court to make that determination. Plaintiff's claim for "substantial aggravation and/or acceleration of pre-existing osteoarthritis left knee may not be considered by this Court until it has properly proceeded through the BWC system.

### IV. Pre-Trial Filings

{¶ 24} The parties exchanged trial materials after the court's July 10, 2012 decision, and on August 3, 2012, Thomas filed "Plaintiff's Objections to Defendants' Trial Materials Exchange." On the same date, DPS objected to Thomas' trial materials, in part objecting to "the submission of any and all causal relationship statements or opinions made by non-testifying experts or physicians or other medical professionals as inadmissible hearsay," as well as "any document that supports the additional allowance of substantial aggravation of pre-existing left knee osteoarthritis." Also on August 3, 2012,

BWC objected to Thomas' trial materials exchange, specifically objecting to "the unredacted medical records of Concerta Medical Center, a March 1, 2010 letter from Dr. Saunders, and the medical records of Amita Patel."

{¶ 25} On August 6, 2012, Thomas appealed the trial court's July 10, 2012 decision to this Court. On August 7, 2012, Thomas moved the trial court to continue the date set for trial, and on August 13, 2012, Thomas filed a motion to stay proceedings "as an appeal has been filed which divests the Court of jurisdiction." On August 16, 2012, the trial court issued an "Order Granting Plaintiff's Motion to Stay Proceedings." On September 19, 2012, this Court dismissed Thomas' appeal for lack of a final appealable order, noting that because "the July 20, 2012 order does not expressly determine that there is no just reason for delay, pursuant to Civ.R. 54(B), we find that it is interlocutory and subject to the court's revision until all claims have been adjudicated."

{¶ 26} On October 15, 2012, the trial court issued an "Amended Final Pretrial Order," in part setting the matter for a trial by jury for the week of May 29, 2013. On March 25, 2013, Thomas filed a "Motion of Plaintiff to Transfer Deposition of Dr. Saunders," asserting that "Dr. Jan Saunders stated that numerous conditions were related to plaintiff's workers' compensation claim." Thomas asserted as follows:

This court has previously dismissed plaintiff's request to include certain conditions that have been raised as being related by Dr. Saunders. With the assumption that this court will not change its ruling on this matter, the parties have informally discussed the exclusion of certain parts of Dr. Saunders' deposition. While plaintiff will request formally those conditions in Dr. Saunders' deposition testimony to be played for the jury including

those conditions, for purposes of preserving his record on appeal, it is understood by plaintiff that this court will not allow such testimony.

Dr. Saunders gave a statement of causal relationship and testimony pertaining to the same relating [sic] to the conditions that are the subject of the current case.

{¶ 27} On April 5, 2013, DPS replied to Thomas motion to transfer, asserting that "Defendants agree that the deposition of Dr. Saunders should be transferred, but assert that the video must be redacted to exclude testimony regarding 'substantial aggravation of pre-existing osteoarthritis, left knee.' " Saunders' deposition is attached to the reply and DPS specified the pages and lines therein to which it objected.

{¶ 28} On April 12, 2013, Thomas filed a "Response of Plaintiff to Defendants' Reply to Motion to Transfer Deposition of Dr. Saunders," in which she asserted that she "expects to renew her objection to this Court's determination that the substantial aggravation of pre-existing osteoarthritis of the left knee should be excluded, based upon recent case law issued by the Ohio Supreme Court," and that "in order to preserve any rights on appeal, Plaintiff would proffer the evidence at trial."

{¶ 29} On April 19, 2013, DPS requested a continuance of the trial date. The trial court granted the motion. On May 22, 2013, the trial court issued an order in part scheduling the matter for jury trial on March 17, 2014. The order set a February 21, 2014 deadline for the exchange of trial materials. On May 29, 2013 the court issued an amended final pretrial order that provides: "The Court vacates the final pretrial order filed May 22, 2013. The trial date, final pretrial dates and Defendant's deadline for taking and filing of perpetuation deposition are the only dates to be rescheduled. There will be no

further discovery or motions in the case."

{¶ 30} On June 10, 2013, the trial court issued a "Decision, Order and Entry Sustaining Motion to Transfer Deposition of Dr. Saunders," which provides in part that Saunders' deposition "shall be transferred from Montgomery County Case 2010 CV 2466 to the present case with all testimony related to 'substantial aggravation of pre-existing osteoarthritis, left knee' redacted from the deposition."

{¶ 31} On January 29, 2014, a "Stipulation Entry Regarding Transfer of the Deposition of Dr. Jan Saunders, D.O.," was filed that provides: "Now come all parties, by and through undersigned counsel, and hereby agree to the transfer of the deposition of Dr. Jan Saunders taken in Case No. 2010 CV 2466 into Case No. 2011 CV 06772, subject to certain redactions. The parties agree that certain portions of Dr. Saunders' deposition shall not be played to the jury." The stipulation identified the pages and lines from the transcript to be excluded. The final page of the stipulation indicates that counsel for DPS signed the stipulation "per e-mail authority 1/29/14," and that counsel for BWC did so "per e-email authority 1/15/14." There is no indication that counsel for Thomas signed the stipulation, although a blank line for signature appears on the final page.

{¶ 32} On February 12, 2014, "Plaintiff's Trial Materials Exchange" was filed. On February 21, 2014, BWC filed "Objections to Plaintiff's Proposed Exhibits," asserting in part that "[m]edical opinions and diagnoses presented via a medical record do not fall within the hearsay exception of Evid. R. 803(6). [H]earsay on hearsay, in the absence of other exceptions to the general hearsay rule, is not admissible, even in view of the business records as evidence statute."

{¶ 33} On March 5, 2014, DPS filed a "Notice of Supplemental Trial Materials

Exchange," which included 248 pages denominated as a "Certified copy of BWC file materials regarding Claim No. 07-373210."

**{¶ 34}** On March 11, 2014, Thomas filed Saunders' deposition, and two days later, "Defendant BWC's Objection Log Re: Jan Saunder[s], D.O." was filed. BWC asserted in part that most "of Plaintiff's objections regarding Dr. Saunders' deposition involve a continuing objection to Defendant's use of arthritis as a defense." According to BWC, "[n]otwithstanding the courts' [sic] ruling granting Defendant's motion to dismiss, Defendants' use of arthritis as a defense is permissible because defendants are arguing that Thomas did not suffer a sprain of the left foot and contusion of the left knee as a result of an alleged occurrence on September 16, 2009." BWC asserted that "Thomas' physical condition on that date was wholly due to a pre-existing condition." BWC asserted that though "both parties rely on the same extensive medical records, the purpose of the proffered evidence differs. Where Thomas' proposed purpose is barred by law, Defendant's proposed purpose is not." BWC also filed a list of its objections to Saunders' deposition.

**{¶ 35}** BWC also filed "Defendant BWC's Objection Log Re: Steven Wunder, M.D." Therein BWC asserted as follows:

* * *

In this case, Plaintiff seeks to introduce another doctor's (Dr. Lee) ultimate conclusion that Plaintiff suffered a contusion of the knee through Dr. Wunder's testimony without subjecting the non-testifying doctor to cross-examination. Whether Plaintiff suffered from a contusion is the ultimate issue of fact before this court. Nothing prevents Plaintiff from calling

Dr. Lee to testify. However, instead of calling Dr. Lee, Plaintiff focused her entire cross-examination of Dr. Wunder on Dr. Lee's ultimate conclusion. Such action merely serves to unfairly prejudice Defendants' case, both by hinting that Dr. Wunder is hiding admissible evidence, and by introducing an opinion that "likely bore a gloss of credibility" without being subject to cross examination.

{¶ 36} Also on March 13, 2014, Thomas filed a Motion in Limine requesting "an order in limine overruling [DPS' and BWC's] objections during Plaintiff's cross-examination of Dr. Steven Wunder." The motion provides that it "pertains to the telephone conference scheduled by Court for * * * March 14, 2014."

{¶ 37} On March 17, 2014, "Defendant BWC's Memorandum Contra to Thomas' Motion in Limine" was filed which provides in part as follows:

* * * Both BWC and DPS have consistently argued that Thomas may not introduce Dr. Lee's hearsay diagnosis without subjecting Dr. Lee to cross-examination. Despite this consistent stance, Thomas now alleges that she was somehow caught off guard by BWC and DPS' position. She also alleges that *Hytha v. Schwendeman*, 40 Ohio App.2d 478 (10th Dist. 1974) has been superseded and is no longer good law. Additionally, she argues that Dr. Wunder is DPS' agent and thus his report is not hearsay. Thomas also argues that BWC and DPS are selectively applying *Hytha*. Finally, Thomas argues that Dr. Wunder relied on Dr. Lee's diagnosis and therefore Dr. Lee's report is admissible. Each of these arguments is in error.

{¶ 38} Also on March 17, 2014, "Defendant, Dayton Public Schools' Memorandum Contra to Thomas' Motion in Limine" was filed, in which DPS incorporated BWC's March 17, 2014 memorandum and asked the court to deny Thomas' motion in limine.   Finally, on March 17, 2014, "Plaintiff's Clarifications of Objections to Defendants' Trial Materials Exchange" was filed. DPS responded to Thomas' clarifications on March 18, 2014.

{¶ 39} On March 24, 2014, the trial court issued a "Final Pretrial Order" setting the matter for trial on November 17, 2014.   On November 12, 2014, "Plaintiff's Supplemental Memorandum in Support of Motion in Limine" was filed.   On November 17, 2014, Thomas filed a "Motion in Limine" for an order "preventing the jury from being provided with any indication that Pamela Thomas' workers' compensation claim has been denied" before the BWC and the IC.

V.   Post-trial Filings and Motion for New Trial

{¶ 40}   The matter was tried to a jury on November 17 and 19, 2014. On November 26, 2014 a "Verdict Entry" was issued in favor of BWC and DPS that provides that "the jury found in favor of the Defendant(s) [BWC] and [DPS].   The jury returned Interrogatory No. 1, finding the Plaintiff **is not** entitled to participate in the Workers' Compensation Fund for the condition of 'Left knee contusion.' " The entry further provides that the "jury returned Interrogatory No. 2, finding the Plaintiff **is not** entitled to participate in the Workers' Compensation Fund for the condition of 'left foot sprain.' "

{¶ 41} On December 17, 2014, Thomas filed a motion to certify the jury's verdict, which provides in part that after the reading of the jury's verdict, "this Court stated that the Court would memorialize the jury's verdict, and requested the parties to prepare a final judgment entry.   The parties have been unable to agree upon language to be contained

within the Court's final judgment entry, given the fact that not all of the conditions previously raised were determined by the jury."

**{¶ 42}** On December 31, 2014, "Defendant, Dayton Public Schools' Memorandum in Opposition to Plaintiff's Motion to Certify the Jury's Verdict and Allocate Costs" was filed, and DPS requested oral argument. On January 7, 2015, "Plaintiff's Memorandum in Response to Defendant's Memorandum in Opposition to Plaintiff's Motion to Certify Jury Verdict and Tax Costs" was filed.

**{¶ 43}** On January 30, 2015, "Plaintiff's Motion for New Trial," pursuant to "Civil Rule 59(A)(1) and (9), as well as other good cause shown under Civil Rule 59(A), and Civ.R. 63(B)" was filed. Therein Thomas asserted as in part follows[1]:

* * *

On June 10, 2013, this Court issued its "Decision, Order and Entry Sustaining Motion to Transfer Deposition of Dr. Saunders," providing that all testimony related to "substantial aggravation of pre-existing osteoarthritis, left knee" must be redacted.

Less than two weeks before trial, on March 5, 2014, Defendant [DPS] filed a "Notice of Supplement to Trial Materials Exchange," seeking to introduce an additional three hundred pages of documents at trial, including approximately two-hundred and fifty documents consisting of "Certified copy of BWC file materials regarding Claim No. 07-373210." The Supplement gave no indication that Defendants sought to introduce redacted documents pertaining to Concentra or Dr. Wunder.

---

[1] Footnotes omitted throughout.

On March 6, 2014, the eve of the final pre-trial, and the eve of the deposition of Dr. Steven Wunder, Defendants' expert witness, [DPS] served a "redacted" version of the medical records of Plaintiff from Concentra, a medical provider who had found Plaintiff to have a contusion of the left knee and a sprain of the left foot, at the time of her injury. Additionally, [DPS] served a "redacted" version of Dr. Steven Wunder's report. Dr. Wunder had been hired by [DPS] to prepare a report and give testimony; his original report was filed with the [IC] and relied upon by Defendants in presenting their arguments to the [IC]. The "redactions" pertained to taking out information relating to the fact that Concentra had diagnosed Plaintiff with a sprain of the left foot and a contusion of the left knee.

Defendants utilized the "redacted" versions of the medical records and Dr. Wunder's report at Dr. Wunder's deposition. Dr. Wunder testified that the "redacted" version of the report was the only version of the report he had authored; he failed to acknowledge in his testimony that he had prepared the unredacted version, and testified that the "redacted" version was modified by Defendant [DPS'] attorneys. On cross-examination, he admitted that the original, unredacted version of his report was prepared by him and given to Defendant [DPS] for hearings before the [IC], and that he considered all of the unredacted versions of medical records which were previously provided to him by Defendant [DPS], and that he considered the opinions of non-testifying physicians in rendering his opinions.

Following Dr. Wunder's deposition on March 7, numerous Motions in

Limine, Objections to Trial Materials Exchanges, and Clarifications were filed. Trial had been scheduled for March 17, 2014. The Court scheduled a telephone conference for Friday, March 14, 2014. Shortly into the conference, the Court announced that it was vacating the trial date to consider all of the Motions filed. The Court scheduled an oral argument for March 19, 2014.

On March 19, 2014, the oral argument did not proceed. Instead, the Court proceeded to announce that it was considering the issues briefed by the parties, and would be putting together an order in short course, together with a new trial date. On March 24, 2014, the Court issued another Final Pre-trial Order, setting trial for November 17, 2014.

Nearly eight months passed, and this Court did not issue any Order as promised. The parties requested a conference with the Court, shortly before trial. A conference was scheduled for November 13, 2014 at 11:00AM, but instead of being with the trial judge, it was with the Court's staff attorney, who proceeded to notify the parties that the trial judge was unavailable, and that an email would be forthcoming to address the issues raised by the parties. An email was sent out by the Court's staff attorney at 8:36PM, Friday, November 14, 2014, in anticipation for Monday, November 17, 2014's trial. The email overruled virtually all of Plaintiff's objections and sustained virtually all of Defendants' objections.

At trial, Plaintiff reiterated her request regarding the "substantial aggravation of pre-existing osteoarthritis of the left knee," and this Court

confirmed that testimony and argument pertaining to the osteoarthritis conditions would not be allowed pursuant to this Court's previous orders.

This matter proceeded to trial by jury on November 17 and November 19, 2014, with this Court only allowing the jury to consider whether Plaintiff suffered from the conditions of "left foot sprain and left knee contusion." Plaintiff presented the deposition testimony of Dr. Jan Saunders, with the testimony pertaining to the osteoarthritis condition redacted. Dr. Saunders gave his opinion that the conditions were related to the workplace accident.

At Dr. Saunders' deposition, he was shown a "First Report of Injury" form by Plaintiff's counsel, which was marked as Plaintiff's Exhibit 1 to his deposition.

{¶ 44} Thomas cited the following exchange from Saunders' deposition:

Q. Doctor, I'd like to show you some documents here. I'll ask this be marked as * * * Plaintiff's Exhibit 1 which I will represent to you is a [BWC] form called the first report of injury. Are you familiar with this type of document?

A. I have seen it before, yes.

Q. There's a description of the incident that was completed and signed by Ms. Thomas. And it reads "I was standing at the classroom door. Two students were horse playing. One of the students hit my leg as she fell to the floor." Is that history consistent with the history that you took?

A. It is. I mean she told me two kids were wrestling and fell onto her leg hitting her on the outside and twisting her foot and hitting her knee.

Q. And the type of injury listed is contusion of knee and foot sprain, both on the left side. Would you agree with that assessment?

A. I think that's reasonable, yes.

{¶ 45} Thomas asserted that she "attempted to publish the exhibit to the jury, on the basis that no objection was timely made by Defendants. No objection was made at Dr. Saunders' deposition to the line of questing set forth above, and importantly, the line of questioning from the deposition was played to the jury at trial." Thomas asserted that the court "refused to allow Dr. Saunders' deposition Exhibit 1." According to Thomas, the "Court noted that '2 is - - supposedly a document that the doctor relied upon. The court is not sending that or allowing that to go back to the jury based upon the fact that it was not objected to at the proper time. In addition, we had some lengthy discussion at side bar, and I'll stand by that.' "

{¶ 46} Thomas asserted that "at trial, this Court allowed Defendants to introduce evidence of Plaintiff's prior workers['] compensation claim from 2007, over the objection of Plaintiff, notwithstanding the fact that Plaintiff specifically requested the Court only allow questioning pertaining to the injury, not her worker's compensation claim."

{¶ 47} Thomas asserted that "this Court allowed Dr. Wunder's deposition to be played without including the majority of Plaintiff's cross-examination." Thomas asserted that she renewed her objections "submitted in the Motion for Order in Limine, and requested this Court give some indication as to the Court's reasoning supporting the same." She asserted that rather than providing the reasoning, "this Court proceeded to criticize Plaintiff's counsel for the timing of making his objection, and summarily overruled it, before ultimately allowing his deposition to be played."

{¶ 48} Thomas asserted that the trial court allowed "Defendants to introduce exhibits which included Dr. Wunder's redacted report, and all of the documentation pertaining to Plaintiff's 2007 workers' compensation claim." According to Thomas, "this Court has not put on a final appealable order despite the parties [sic] request for a proper termination entry; the parties disagree as to whether the court should include a specific finding that the 'substantial aggravation of pre-existing osteoarthritis' is to be included in the Judgment Entry."

{¶ 49} Thomas asserted that "[b]y virtue of the expiration of her term, Judge McGee is incompetent to determine the language to be included in the judgment entry or to sign the judgment entry. * * * Therefore, it falls upon Your Honor to determine the proper language to be included in the judgment entry and to sign the same." Thomas noted that in "contrast to the requirements of Civ.R. 59(A), the successor judge provisions of Civ.R. 63(B) do not require the Court to detail the reasons for granting a new trial in writing."

{¶ 50} Thomas then asserted four specific arguments. His first argument was as follows: "The trial court erred by allowing Dr. Wunder's deposition to be played without including Plaintiff's cross-examination, and by ultimately allowing his 'redacted' report to be submitted to the jury." Thomas asserted as follows:

Plaintiff renewed his [sic] objection to Dr. Wunder's testimony being played without Plaintiff's cross-examination immediately before it was played to the jury. Instead of acknowledging Plaintiff's objection, and responding to Plaintiff's request for the Court's reasoning as to why Plaintiff's cross-examination was to be excluded, and as to why the jury would not be allowed to see Dr. Wunder's original report, this Court instead

spent the time at side bar criticizing Plaintiff's counsel for raising the objection after the jury had shortly returned from lunch. Judge McGee did not provide any reasoning for her ruling. * * * This Court compounded its error by allowing Dr. Wunder's redacted report, which constitutes hearsay as a report prepared in anticipation of litigation, to be presented to the jury.

This had a substantial impact upon Plaintiff's ability to present her case.  Dr. Wunder's cross-examination was crafted in light of the fact that modifications to a report prepared by Dr. Wunder had occurred.  This Court's determination that Dr. Wunder's cross-examination could not be presented was unsupported by any reasoning given by the trial court. Plaintiff was unable to cross-examine Dr. Wunder with respect to the fact that he reviewed a record, in the ordinary course of preparing an independent medical examination, and was of the type which he relied upon extensively through his report, to Plaintiff's detriment.  The jury was left with an altered report which was not authentic evidence, and from which Defendants sought no order of the Court prior to the deposition in submitting the information presented.  This error is compounded by the fact that Defendants had submitted multiple trial materials exchange which indicated that no redaction was included.  Rather, Defendants waited until the eve of Dr. Wunder's deposition to give its first notice that certain alterations were going to be made by Defendant's counsel notwithstanding the fact that they constituted an admission of a party opponent.

Plaintiff had the right to seek the introduction of Dr. Wunder's full

report, as reports of independent medical examiners are statements of party-opponents admissible as non-hearsay by an opponent under Evid.R. 801(d)(2), applied by *Szulinski v. Kellison & Co.*, Cuyahoga App.No. 99672 and 99674, 2014-Ohio-111.

Notwithstanding the fact that Plaintiff had the right to seek the introduction of Dr. Wunder's report, Defendants should not have been allowed to present the report of Dr. Wunder to the jury, as the report was not a "business record" under Evid.R. 803(6), but rather was prepared in anticipation of litigation. * * *

Dr. Wunder's report was only redacted to include an elimination of references to evidence favorable to Plaintiff in the record - - evidence of the diagnosis of contusion and sprain.   On the other hand, Dr. Wunder also included in his report a discussion of other, non-treating experts.   For example, Dr. Wunder stated in his report that "Dr. Freemen did not think her symptoms were due to a left knee contusion or sprain but rather due to non-allowed osteoarthritis."   * * *   No redaction was sought by Defendants, and the Court, over the objection of Plaintiff, allowed the   submission of non-treating physician opinions, through Dr. Wunder, to the jury, despite the fact that it resulted in a disparate application of Defendants' supporting authority, *Hytha*. That such disparate treatment is prohibited by case law was brought to the attention of the trial court prior to trial, but this Court overruled such arguments.   *Wolgamot v. Heit*, 2002-Ohio-2332.

* * *

**{¶ 51}** Thomas' second argument was as follows: <u>"The trial court erred by allowed [sic] the introduction of evidence pertaining to Plaintiff Pamela Thomas' 2007 workers' compensation claim, instead of simply allowing evidence pertaining to her knee injury</u>." Thomas asserted as follows:

\* \* \*

Interestingly, the evidence submitted by Defendants, and submitted to the jury, included the entire administrative record of Plaintiff's previous workers' compensation claim from 2007. This included diagnoses of non-treating physicians, which would be hearsay utilizing Defendants' reasoning. Notwithstanding the fact the documentation pertaining to her workers' compensation was entirely prejudicial to Plaintiff's 2009 workers' compensation claim, this Court allowed that information to be submitted to the jury.

Additionally, this Court allowed the testimony of Pamela Thomas as it pertained to her previous workers' compensation claim. At trial, Plaintiff's counsel objected to the introduction of such testimony on the grounds that it was prejudicial, and even conceded to the trial court that Defendants were free to cross-examine Plaintiff Pamela Thomas regarding the fact that she had a prior knee injury in 2007. Not willing to accept Plaintiff's concession that evidence pertaining to the prior injury to the knee was admissible, this Court simply disregarded Plaintiff's objection and allowed such evidence in the form of testimony and documentation to be submitted to the jury.

\* \* \* The fact that Plaintiff had a previous knee injury in 2007 may

be helpful to the jury's determination of whether she suffered a new injury in 2009, but the manner in which her injury occurred, and the benefits she applied for and may have received in 2007, was not helpful to the jury's rational determination of whether she suffered a new injury in 2009. Such evidence was entirely prejudicial, as it led the jury to the ultimate conclusion that she did not suffer an injury in 2009 at work, for the simple reason that she had also suffered an injury in 2007. Clearly, the submission of such evidence is evidence that the verdict was the product of passion and prejudice, justifying a new trial. * * *

{¶ 52} Thomas' third argument was as follows: <u>"The trial court erred by refusing to submit an exhibit to the jury when the exhibit was relied upon by Dr. Saunders at his deposition to answer questions, without objection, and when the questions and answers were played to the jury</u>." Thomas asserted as follows regarding the First Report of Injury discussed above:

Plaintiff was clearly prejudiced by the Court's refusal to allow the exhibit to be presented to the jury. No objection was made to the exhibit at the time of Dr. Saunders' deposition, which allowed Plaintiff to believe the document would be introduced into evidence, thus, necessitating the need to call an additional witness from Concentra. Moreover, Dr. Saunders' testimony would have lost credibility with the jury, considering that the jury was not allowed to see a document that Dr. Saunders reviewed at his deposition, thus calling into question his veracity, as he was rendering an opinion on a document which was not received into evidence.

As such, the failure of the Court to publish an exhibit to the jury, when the document had been relied upon by a testifying expert to render an opinion made without objection, clearly prejudiced Plaintiff, as it constitutes an irregularity in the proceedings. * * *

**{¶ 53}** Finally, Thomas asserted the following final argument: "This Court should grant a new trial, as this Court cannot effectively issue a judgment entry disposing of all issues in the case under Civ.R. 63(B), as this Court has made inconsistent rulings regarding the condition 'substantial aggravation of pre-existing osteoarthritis of the left knee' which makes effective review of the case difficult." Thomas asserted as follows:

* * *

Here, the Court's denial of the claim for "substantial aggravation of pre-existing osteoarthritis of the left knee" based upon res judicata is not supported by solid reasoning. As discussed above, res judicata requires a "final judgment or decree." The [IC] purported to deny Plaintiff's entire claim in its [SHO's] order. Because Plaintiff filed a Notice of Appeal which vested the Court with jurisdiction, there was not a "final judgment or decree" of any condition, as the claims were pending with this Court. It is completely illogical to provide that a certain claim is denied on the basis of "res judicata," when the Court presently possessed jurisdiction to decide the claim in the first instance. A claim cannot be denied on the basis that it been [sic] finally denied before, when there has been no final determination to begin with.

Compounding this issue was the court's refusal to allow the jury to

consider the osteoarthritis condition on the original allowance claim. This Court applied *Ward v. Kroger* to require Plaintiff to present her claim before the [IC]; the[IC] denied the second filing on the basis or res judicata. Either the osteoarthritis should have been allowed to be presented with respect to the Court's jurisdiction possessed from the first Notice of Appeal or the second Notice of Appeal. Given that a single re-filing combined both Notices of Appeal together into a single complaint, the Court must have had jurisdiction to consider the condition under one or both. To find a lack of jurisdiction in the first instance, and a denial based upon res judicata in the second (referring to the first instance pending at the time when nothing was adjudicated) is illogical.

The Court did not enter a final Judgment Entry. The parties could not agree on appropriate language to be included in the Entry. Counsel for Plaintiff believed that the Judgment Entry should reflect the fact that this Court denied the claim for three conditions – (1) left foot sprain; (2) left knee contusion; and (3) substantial aggravation of pre-existing osteoarthritis. The first two conditions were denied by the jury verdict, while the third was denied by the Court in its previous interlocutory decision. Counsel for [DPS] believes the Judgment Entry should reflect that the "entire claim" should be denied (notwithstanding its previous argument that only certain conditions may be raised). As the parties cannot even agree upon what was decided by Judge McGee, a new trial pursuant to Civ.R. 63(B) is appropriate.

{¶ 54} On March 13, 2015, BWC responded to Thomas' motion for a new trial. BWC initially argued that "**Thomas failed to present a transcript of the proceedings sufficient to enable the court to exercise its discretion in granting the motion for a new trial.**" BWC asserted as follows:

* * *

Here, Thomas improperly presents about 40 pages of testimony. First, there is no evaluation of the Tape or CD recording form to ensure the quality of the proceedings. Secondly, there is no indication of which portions of the record were requested, and importantly, which portions were excluded. * * *

Not only does the partial transcript fail to state what is included and excluded, but the partial transcript also fails to explain why the court made its rulings. Notably, the partial transcript, on page 4, states that the Court "notes the objection" without more.

Further, on page 8-27, Thomas' [sic] proffers one single page of evidence. The parties talk in general about what the court previously ruled, but the court's actual ruling is not included in the transcript. In addition, though Thomas proffered his [sic] exhibits, which, as the passage indicates, was different from the one exchanged previously, Thomas does not submit his [sic] proffered exhibits for the court's review. Likewise, on page 22, as the court was about to give its rational [sic] and explain its ruling, Thomas cut her off. * * * Finally, the insufficiency of the transcript is apparent on page 31, where the court says "let's follow what the court had allowed. And I

think you made your point, but I'm going to overrule the objection." * * * Thomas does not attach, or include, "what the court has already ruled."

Even assuming that some of the discussion found in the partial transcript pertains to the court's preliminary ruling sent via email on November 13 and 14, 2014, a court's preliminary ruling does not serve as the basis for an assignment of error. The function of preliminary instruction is to avoid error, prejudice, and possibly a mistrial by prohibiting opposing counsel from raising or making reference to an evidentiary issue *until the trial court is better able to rule upon its admissibility outside the presence of a jury once the trial has commenced.* * * *

Moreover, it is well recognized that a court speaks only through its journals. * * * Here, the e-mails were not journalized and not presented to the clerk to become part of the permanent record of the court.  Thomas also did not reference the e-mails in the partial transcript that she provided. The partial transcripts provided by Thomas do not contain any official rulings from the court. Here, the improperly certified and incomplete transcript is tantamount to no transcript, and should be disregarded. * * *

{¶ 55} BWC next asserted that **"Thomas is not entitled to a new trial under Civ.R. 59."** BWC argued that pursuant to Civ.R. 59(A)(1), there were no irregularities warranting a new trial. According to BWC, "many of the issues Thomas complains of were created by Thomas."  Citing a January 10, 2011 email correspondence between the parties, BWC asserted that "despite knowing that DPS and BWC sought to limit the scope of Dr. Saunders' testimony, Thomas's counsel pressured DPS and BWC to delay filing a

motion in limine "until after Dr. Saunders' [sic] testified.' "  BWC argued that "any alleged choppiness in Dr. Saunders' video deposition" could have been avoided if counsel for Thomas worked with BWC and DPS to "determine the scope of Dr. Saunders' testimony" prior to his deposition.

**{¶ 56}** BWC noted that while the rules of evidence "are not controlling in hearing[s] at the administrative level," "Dr. Wunder's report was inadmissible under the court rules of evidence."  BWC argued that Thomas knew that it and DPS objected to Dr. Lee's diagnoses in the Concentra records "as early as August 3, 2012," and that they "supported their objections with citations to Evid.R. 803(6), *Hytha v. Schwendeman*, 40 Ohio App.2d 478, and *Ruth v. Moncrief*, 2d Dist. Montgomery No. 18479, 2001-Ohio-1709."  BWC argued as follows:

> Despite this knowledge, Thomas never submitted Dr. Wunder's unredacted report as a trial exhibit.  Instead, Thomas submitted two different trial material lists on July 27, 2012 and February 21, 2014, neither of which included Dr. Wunder's unredacted report.  If, as Thomas argues, Dr. Wunder's non-redacted report were so very vital to her defense, she would have included it in her trial materials.  Instead, the evidence strongly suggests that Thomas took advantage of an unredacted diagnoses [sic], which she knew or should have known was otherwise inadmissible.

**{¶ 57}** Thomas directed the court's attention to *Parrish v. Jones*, 4th Dist. Ross No. 11CA3238, 2012-Ohio-1145 and argued as follows:

> As in *Parrish*, Thomas had the ultimate burden to prove her case.   If Dr. Lee's diagnosis was vital to her claim, she should have called Dr. Lee

as a witness. However, she chose not to subject Dr. Lee to cross-examination. Instead, Thomas used her entire cross-examination of Dr. Wunder to discuss Dr. Lee's inadmissible diagnosis. Rather than using her cross-examination to challenge Dr. Wunder's findings or diagnosis, she insinuated that Dr. Wunder changed his opinion or relied on Dr. Lee's diagnosis. Dr. Wunder did not state that he relied on Dr. Lee's diagnosis in his independent medical examination report. In fact, he testified that he did not rely on Dr. Lee's opinion. Dr. Wunder deposition page 67-69, and 72. Therefore, it is fallacy for Thomas to suggest that she somehow relied on Dr. Wunder's mere recitation of Dr. Lee's diagnosis. Though DPS noticed the errant diagnosis in preparation of Dr. Wunder's trial deposition, the redactions to Dr. Wunder's report conformed with DPS' and BWC's ongoing objections. Because there was no irregularity, Thomas is not entitled to a new trial under Civ.R. 59(A).

{¶ 58} BWC argued that the jury and the defendants did not engage is misconduct, and that Thomas' "bare allegation provides no information or basis for the court to grant a motion for new trial."

{¶ 59} BWC next argued that "Thomas has not met her burden of proving that she has been prejudiced by the evidence admitted." BWC asserted that Thomas' cross-examination of Dr. Wunder regarding the Concentra diagnosis was properly excluded by the trial court, and "there is no colorable claim of surprise." BWC argued that the "redacted portions of Dr. Wunder's IME report in no way alter his opinion. Dr. Wunder opined that Thomas did not suffer a sprain of the foot or a contusion of the knee." BWC

asserted that "Dr. Wunder did not rely on Dr. Lee's diagnosis."

**{¶ 60}** BWC asserted as follows regarding Dr. Wunder's report:

Thomas argues that she should have been permitted to submit Dr. Wunder's entire report because Dr. Wunder is a "party-opponent" because DPS has retained him as an expert numerous times. In an attempt to support her contention, Thomas cites *Szulinski v. Kellison & Co.*, 8th Dist. Cuyahoga No. 99672, 99674, 2014-Ohio-111. Significantly, unlike this court, the 8th District Court of Appeals does not recognize *Hytha*, *supra*. *Szulinski* specifically relies on the fact that the medical diagnosis of a non-testifying physician is admissible. This is in direct contravention with binding precedent in the 2nd District Court of Appeals.

**{¶ 61}** BWC asserted the "key determination in agency theory is who has the right to control the manner or means of doing the work. * * *." BWC argued that "there is no evidence that Dr. Wunder agreed to be bound by DPS' wishes or that he agreed to testify in a particular manner. He did not agree to be subject to DPS' control in giving his testimony." BWC argued that "the court properly excluded Thomas' questions regarding Dr. Lee's records from Concentra as well as the unredacted report." BWC asserted as follows:

Moreover (and more locally), the diagnosis is still inadmissible because it is attributable to a third party, rather than to Dr. Wunder himself. Under Ohio law, "where the supplier of the hearsay information fails to qualify under the rule then the evidence is inadmissible, despite the fact that the recorder may be qualified." *McCormick v. Mirrored Image, Inc.*, 7 Ohio

App.3d 232, 234 (Hamilton 1982), *see also* Ohio R.Evid. 805 (hearsay within hearsay is inadmissible). Here, though Dr. Wunder may be the recorder of Dr. Lee's diagnosis, he is not the supplier.

Because an independent expert is not an agent of a party opponent, granting a new trial on the basis that Dr. Wunder is an agent of Defendant DPS would be in error.

**{¶ 62}** BWC next asserted that the "trial court properly applied *Hytha, supra*, to redact statements made by a non-testifying doctor contained in Dr. Wunder's records." BWC argued that "it would have been extremely prejudicial for a non-testifying physician's opinion to be heard" relating to the conditions at issue. BWC asserted that "Dr. Wunder based his opinion on objective x-rays, CT scans and MRIs, which by law are not considered diagnoses, rather are considered objective facts." According to BWC, because "the testifying experts in this case agreed that Thomas had long-standing osteoarthritis, it was not error for the court to admit records from Dr. Dickens and Grandview Hospital saying the same thing."

**{¶ 63}** BWC argued that evidence of Thomas' 2007 injury was properly admitted. According to BWC, "Thomas testified that she had constant pain since her 2007 injury. Thus, such injury, and the treatment she received as a result, was completely relevant for the jury, which was asked to decide whether Thomas sustained a new injury."

**{¶ 64}** BWC argued that the court's redaction of Dr. Lee's diagnosis from the First Report of Injury did not prejudice Thomas. BWC asserted that "Thomas does not provide the trial transcript concerning the court's rulings on Exhibit 1, which is Plaintiff's FROI, containing the diagnosis." BWC asserted as follows:

Moreover, Thomas could have mitigated any perceived harm by submitting the redacted FROI. Though Thomas used the unredacted Exhibit 1 during Dr. Saunders' testimony, she did not publish the document to the jury at that time. Also, when Thomas' counsel questioned Dr. Saunders, she did not rely on those portions of the FROI that were eventually redacted. Thomas fails to point out that she displayed the redacted exhibit during her re-direct. * * * Yet, when the time came to introduce exhibits, she refused to submit redacted documents to the jury. * * * Simply put, the jury would not have known that the version of Exhibit 1 that was published during trial was not the same version of Exhibit 1 that was before Dr. Saunders. Therefore, if Dr. Saunders "lost credibility" with the jury due to Thomas' failure to submit exhibits, then the error was created by Thomas.

{¶ 65} BWC asserted that the trial court "should perform the ministerial act of signing the final judgment entry confirming the jury's verdict" "denying Thomas' right to participate in the worker's compensation fund for the conditions of left knee contusion and left foot sprain." BWC argued that "substantial aggravation of osteoarthritis was never adjudicated. As such that condition was neither allowed nor denied."

{¶ 66} Finally, BWC asserted that "Thomas attempted to create several errors, which she now alleges entitle her to a new trial." BWC noted that on "several occasions, the court's prior term cautioned Thomas that it appeared that Thomas was attempting to sabotage the trial knowing that the court's term was soon expiring * * * and calling Thomas' strategy a 'trial by ambush.' "

{¶ 67} On March 16, 2015, "Plaintiff's Motion to Supplement Motion for New Trial" was filed, in which Thomas sought to "supplement the partial transcript previously filed with a full record of the proceedings." The court granted the motion.   On May 7, 2015 DPS opposed Thomas' motion for a new trial, incorporating the arguments in BWC's memorandum in opposition.

{¶ 68} On May 8, 2015, Thomas filed "Plaintiff's Supplemental Memorandum in Support of Plaintiff's Motion for New Trial," noting that she supplemented the record with the complete transcript and incorporating the transcript into her motion for new trial. Thomas asserted that "trial court Judge McGee relied extensively upon-pre-trial rulings which were filed with the Court exhibits at the trial of this matter.   The trial court failed to consider the arguments made at the time, and relied solely on the previous rulings incorporated in the e-mail."

VI. Decision on Motion for New Trial

{¶ 69}   In its "Decision and Entry Granting Motion for New Trial," the court initially noted that since the verdict, "the parties have not resolved their differences about the terms of a Judgment Entry and a Judgment Entry has not been filed."   The court then noted the grounds for a new trial pursuant to Civ.R. 59(A), which provides in relevant part as follows:

(A) Grounds

A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:

(1) Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of

discretion, by which an aggrieved party was prevented from having a fair trial;

(2) Misconduct of the jury or prevailing party.

(7) The judgment is contrary to law;

* * *

(9) Error of law occurring at the trial and brought to the attention of the trial court by the party making the application.

In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown. When a new trial is granted, the court shall specify in writing the grounds upon which such new trial is granted.

**{¶ 70}** The court then determined that "Plaintiff's motion details a myriad of 'irregularities' in this proceeding," and that the "primary source of the 'irregularities' " was the trial court's July 10, 2012 pretrial ruling. The court conducted the following analysis:

In *Ward v. Kroger*, the claimant injured his right knee during employment with Kroger. The commission allowed for a "knee sprain" but disallowed the claim of a medial meniscus tear and chondromalacia of the right knee. The plaintiff appealed to the court of common pleas pursuant to R.C. 4123.512 seeking to participate in the Workers Compensation Fund for the medial meniscus tear and chondromalacia of the right knee. He then amended his complaint to add the conditions of aggravation of preexisting degenerative joint disease and aggravation of preexisting osteoarthritis. * * * The jury found in the plaintiff's favor on the added claim

only. * * * The court of appeals reversed the trial court's judgment as exceeding the trial court's jurisdiction since the added claim had never been considered by the BWC.

The Supreme Court in *Ward* affirmed the holding that the medical conditions addressed on appeal to the court of common pleas are those addressed in the order that was appealed. It stated, "The grant or denial of the right to participate for one injury or condition does not preclude a subsequent claim for participation in the fund based on another injury or condition arising out of the same industrial accident. But any such claim must be initiated before the Industrial Commission." * * * In other words, "each injury or condition that is alleged to give the claimant a right to participate . . . must be considered as a separate claim for purposes of R.C. 4123.511 and 4123.512 . . ." * * *

The Supreme Court distinguished the appellate decision in *Robinson v. AT&T Network Systems*, 10th Dist. Franklin App. No. 02AP-807, 2003-Ohio-1513 (10th Dist. Franklin [C]ounty, March 27, 2003), where a claimant failed to appeal the denial of an earlier claim for degenerative disc disease at L-4-5 and L5-S1 but then appealed a subsequent claim denial for aggravation of preexisting disc disease at the same location. The Tenth District Court of Appeals had applied *res judicata* to deny the subsequent claim. The unappealed disallowance by the commission became a final order: "when Robinson declined to pursue an R.C. 4123.512 appeal of the original claim, where he could have presented the two arguments

alternatively, he forfeited his opportunity to litigate a variant of the initial causation theory." * * *

The Supreme Court did not apply *res judicata* to the situation in *Ward.* It held the court of common pleas reviewed orders from the industrial commission so that a separate claim for aggravation of preexisting osteoarthritis could not be added by the trial court without being considered by the commission. * * * It stated, "In other words, the conditions of medial meniscus tear and chondromalacia . . . are distinct from the conditions of aggravation of preexisting degenerative joint disease and osteoarthritis. Thus, regardless of whether Ward raised these latter conditions at trial, *Robinson* would not apply *to prevent him from going back to the administrative agencies and requesting their allowance."* * * * The Supreme Court concluded, "we hold that the claimant in an R.C. 4123.512 appeal may seek to participate in the Workers' Compensation Fund only for those conditions that were addressed in the administrative order from which the appeal is taken." * * * It expressed "no opinion" on whether "a claim for a certain condition by way of direct causation must necessarily include a claim for aggravation of that condition for purposes of either R.C. 4123.512 or res judicata." * * *

{¶ 71} The court noted that Thomas "sought to amend the scope of her appeal from 'contusion left knee and sprain left foot' to add the 'aggravation of preexisting osteoarthritis left knee,' " but she then "voluntarily dismissed the case without prejudice and returned to the commission and filed a separate claim for the 'aggravation' condition."

The court noted that a dismissal pursuant to Civ.R. 41 "is not an adjudication on the merits." The court further noted that when Thomas "re-filed her case in this Court she included the original claim for 'contusion' and the recently denied claim for 'aggravation,' " and the court concluded that doing so complied with *Ward.* The court further concluded that "since the trial court had not ruled on the additional claim, there was no judgment from this Court upon which *res judicata* could be based." The court noted that its predecessor denied the aggravation claim on the basis of res judicata, and BWC "stated that the 'aggravation' claim was subsumed in the first claim for 'contusion' and its decision on it was final, invoking a form of administrative *res judicata* referenced in *Robinson, supra."* The court concluded that "[t]his reasoning is contradicted by the Supreme Court ruling in *Ward v. Kroger* that the aggravation claim is a separate claim."

**{¶ 72}** The court further noted that "the denial of the contusion claim was not final as in *Robinson, supra.* Thomas appealed to this Court for *de novo* review based on the evidence presented before a jury and without deference to the rulings at the commission." In other words, the contusion claim was timely appealed and voluntarily dismissed without prejudice, "so the dismissal was not a final judgment that could constitute *res judicata.* It was subject to re-filing that occurred in this case. There is no basis for dismissing Thomas' appeal in the aggravation case based on *res judicata* since there was no final judgment entered. The re-filing of the appeal continued the appeal to obtain *de novo* review."

**{¶ 73}** The court continued as follows:

Accordingly, the court now reconsiders the interlocutory decision, Civ.R. 54(B), dismissing the appeal of the aggravation claim and overrules

that decision as contrary to law.   Civ.R. 59(A)(7).   The irregularities at trial and otherwise in this proceeding were linked to the Trial Court's order of dismissal and implementation of the same, including striking plaintiff's cross-examination of the defense expert witness and redaction of reports and submission of reports to the jury, all of which prevented Thomas "from having a fair trial".   Civ.R. 59(A)(1).   In effect, the jury only heard the defense expert, Dr. Wunder, on direct examination.   His report was redacted and modified by counsel for Dayton Public Schools, * * * but he acknowledged that he considered all of the un-redacted versions of medical records and considered the opinions of non-testifying physicians in rendering his opinions. * * * This Court did not rule on objections to trial material and motions *in limine* scheduled for telephone conference for March 14, 2014 for the trial on March 17, 2014.   This Court vacated the trial date and reset it for November 17, 2014.

At trial, the Court only allowed the jury to consider whether Thomas suffered from the conditions "left foot sprain and left knee contusion." * * * She was prevented from using the "First Report of Injury" exhibit relied on by her expert, Dr. Saunders. * * * This Court allowed defendants to introduce evidence of a prior workers (sic) compensation claim from 2007, overruling the objection that questioning be limited to the injury and not the claim and benefits sought. * * * The Court agrees that this information could have caused the jury to react in a prejudicial manner to Thomas and her claim.

Also, Dr. Wunder's report in anticipation of trial was presented to the

jury over objection.   * * * This included opinions of non-treating physicians. See *Ruth v. Moncrief*, Montgomery App. No. 18479, 2001-Ohio-1709 (2d Dist. Montgomery County, November 2, 2001). These matters were unfairly prejudicial to Thomas's case and presentation to the jury.

The Trial Court's erroneous ruling prevented Thomas from having effective *de novo* review in this Court with an untainted jury as the statute contemplates in authorizing such an appeal.   The parties' preparation for trial and evidentiary materials were so interrelated with both the contusion claim and the aggravation claim that the Court's attempt to dissect them rendered the trial confusing and unfairly prejudicial to Thomas. * * * The trial court's attempts to conform the evidence and argument to its erroneous order dismissing the case as to the "aggravation" claim cast Thomas's case in an unfairly negative light before the jury who were unaware of the legal rulings and implications.   This Court applies the principle stated in *Pesek v. Univ. Neurologists Assn, Inc.,* 87 Ohio St.3d 495, 502, 2000-Ohio-483, 721 N.E.2d 1011 (2000), that where there is "room for doubt" as to whether the verdict "may have been influenced by" improper conduct or rulings, "that doubt should be resolved in favor of the defeated party."

Defendants argue that the trial problems were caused by Thomas's attorneys mishandling of the trial.   * * * The Court does not agree. Counsel for Thomas was continually placed in an unfair position in presenting Plaintiff's case.   A new trial is mandated to allow Thomas a fair trial for *de novo* consideration of her claims to participate in the workers[']

compensation fund for her work-related injuries. Therefore, the Court hereby grants the motion for a new trial. * * *

VII. Arguments on Appeal

**{¶ 74}** In their briefs, BWC and DPS each assert four assignments of error. We will first consider BWC's first assigned error. BWC asserts as follows:

THE TRIAL COURT ERRED IN REVERSING A PREVIOUSLY GRANTED PRE-TRIAL MOTION TO DISMISS AFTER TRIAL CONCLUDED.

**{¶ 75}** In its first assignment of error, BWC cites *Zink v. Harrison*, 2d Dist. Montgomery Nos. 12201, 12684, 1992 WL 164053, *11 (July 16, 1992), which noted that a "partial summary judgment is an interlocutory order under Civ.R. 56(C) which is subject to revision at any time before the entry of final judgment. See Civ.R. 54(B). A motion to vacate would appear to be a proper vehicle for obtaining such revision." This court noted that "a motion to vacate a partial summary judgment should only be entertained in extraordinary circumstances because a party who has provided discovery to the non-moving party in accordance with the civil rules, and who has obtained a partial summary judgment in accordance with Civ.R. 56, should enjoy the benefit of the partial summary judgment at trial." *Id.* BWC asserts that "Thomas did not file a motion to vacate or reconsider the court's order, which granted Defendant's motion for partial dismissal, though she had more than two years to do so. As was the case in *Zink*, once trial started, BWC and DPS were entitled to rely on the court's grant of its partial motion to dismiss once the trial began on the remaining issues." In its reply brief, in reliance upon *Zink*, BWC asserts that once "a trial commences, a partial dismissal becomes final and litigants

are entitled to rely on the partial dismissal to determine what evidence to present."

{¶ 76} In *Zink,* the Zinks sued Harrison, asserting that excavation he performed removed support from their premises. *Id.,* \*1. The trial court sustained Harrison's motion for summary judgment as to statutory violations, and at the end of the Zinks' case in chief, Harrison moved for a directed verdict on multiple grounds. *Id.,* \*2.  In response, the Zinks orally moved to vacate the prior summary judgment in Harrison's favor on the grounds that the evidence supported their statutory claim. *Id.*  The trial court overruled the motion and directed a verdict in favor of Harrison. *Id.*

{¶ 77} On the Zinks' appeal, this Court noted that the only question relevant to the determination of the statutory claim was whether Harrison's excavation exceeded nine feet in depth. *Id.,* \* 10. This Court noted that Harrison provided an affidavit averring that he did not dig below nine feet, that it was then up to the Zinks to establish a genuine issue of material fact on the issue for trial, and that they failed to do so. *Id.* This Court noted that "Civ.R. 56(D) clearly states that once a trial court determines, in conjunction with a motion for summary judgment, that a particular fact is without controversy, and journalizes that determination, that fact is deemed established and may not be controverted at trial." *Id.,* \*11. This Court determined that Civ.R. 56(A-C, E) "strongly suggest that evidence in support of a motion to vacate a partial summary judgment should not take the form of trial evidence." *Id.*  Instead, this Court indicated that the evidence should "be attached to a written motion to vacate, just as evidence is attached to a motion for, and memorandum opposing, summary judgment.  While there may be situations where these formalities may be properly dispensed with, this case does not present any such situation."  *Id.* This court concluded, "given the immediacy of trial, the Zinks were required to move to

vacate as soon as they became aware of the trial court's decision to grant summary judgment." *Id., * 12.

{¶ 78} The procedural context herein and in *Zink* are distinct, and we cannot conclude that *Zink* required Thomas to file a motion to vacate the dismissal of Claim #2. Thomas proceeded to trial on Claim #1, and her motion for a new trial was based upon "irregularities" that occurred at that trial. BWC' first assignment of error is overruled.

{¶ 79} We will next address DPS' first and second assignments of error, and BWC's second assignment of error together. DPS' first and second assignments of error are as follows:

JUDGE SKELTON ERRED WHEN HE REVERSED JUDGE MCGEE'S DECISION TO GRANT APPELLANTS' MOTION TO DISMISS THE ARTHRITIS CLAIM.
And,

JUDGE SKELTON ERRED WHEN HE RELIED UPON HIS DECISION TO OVERTURN JUDGE MCGEE'S GRANTING OF APPELLANTS' MOTION TO DISMISS IN ORDER TO GRANT THOMAS A NEW TRIAL.

{¶ 80} BWC's second assignment of error is as follows:

THE TRIAL COURT ERRED IN GRANTING A NEW TRIAL ON THE BASIS OF ITS PREVIOUSLY GRANTED MOTION TO DISMISS BECAUSE A MOTION TO DISMISS IS NOT A TRIAL UNDER THE OHIO RULES OF CIVIL PROCEDURE.

{¶ 81} In its first assignment of error, DPS asserts that "a motion for a new trial is

not a proper, authorized or effective procedural device by a plaintiff to attack a dismissal of an action." In its second assignment of error, DPS asserts that a "new trial cannot be granted based upon a decision to overrule a motion to dismiss." DPS relies in part in both assignments of error upon *Knecht v. Ohio Department of Rehabilitation and Correction*, 78 Ohio App.3d 360, 363, 604 N.E.2d 820 (10th Dist. 1992), which concluded in part that "the Ohio Rules of Civil Procedure do not intend rulings on Civ.R. 12(B)(1) and 12(B)(6) motions to constitute trials."

{¶ 82} In its second assignment of error, BWC asserts that "a new trial does not properly lie from a motion to dismiss because no judgment was rendered on the evidence." Both parties cite *First Bank of Marietta v Mascrete*, 79 Ohio St.3d 503, 684 N.E.2d 38 (1997), which in turn cited *L.A. & D., Inc. v. Lake Cty. Bd. of Commrs.,* 67 Ohio St.2d 384, 423 N.E.2d 1109 (1981), which held that " 'a summary judgment proceeding is not a trial but rather is a hearing upon a motion.' " *Mascrete*, 509.

{¶ 83} Thomas' motion for new trial was not specifically addressed to the trial court's July 10, 2012 decision but rather to alleged errors that occurred at trial regarding the omission and exclusion of evidence, pursuant to Civ.R. 59(A). The trial court concluded that the "primary source" of the irregularities at trial resulted from the July 10, 2012 decision. As this Court previously determined, the trial court's dismissal entry was interlocutory in nature and, pursuant to Civ.R. 54(B), "subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." We conclude that DPS' first and second assigned errors lack merit, and that BWC's second assignment of error lacks merit; while BWC is correct that no trial occurred on Claim #2, nevertheless there was a trial on Claim #1, in which the court concluded that

irregularities occurred, thereby depriving Thomas of a fair trial. Hence, there was no absence of a trial as to whether or not Thomas sustained an injury on September 16, 2009. Accordingly, these assignments of error are overruled.

{¶ 84} We will next address BWC's and DPS' third assignments of error. BWC's third assignment of error is as follows:

THE TRIAL COURT ERRED IN GRANTING A NEW TRIAL BECAUSE IT HAD NO BASIS TO DO SO UNDER *WARD V. KROGER.*

1. Arthritis was not administratively adjudicated under Claim I.

2. Claim II is barred by *res judicata.*

3. Under *Ward v. Kroger*, the trial court lacks jurisdiction over Count II/Claim II because the commission did not adjudicate arthritis.

{¶ 85} DPS' third assignment of error is as follows:

JUDGE SKELTON ERRED WHEN HE IMPROPERLY APPLIED *WARD V. KROGER* AND THE PRINCIPLES OF *RES JUDICATA* IN ORDER TO GRANT A NEW TRIAL.

1. Thomas failed to request the allowance of arthritis in Claim #1; as a result, this condition was not adjudicated administratively.

2. The doctrine of *res judicata* clearly bars Claim# 2.

3. Pursuant to *Ward v. Kroger*, the trial court lacked jurisdiction over Claim# 2 because the Commission did not adjudicate the allowance of arthritis.

{¶ 86} We must first address the appropriate standard of review herein for the remaining assignments of error before addressing the basis of the decision granting a

new trial. BWC directs our attention to *Rohde v. Farmer*, 23 Ohio St.2d 82, 262 N.E.2d 685 (1970), which provides as follows at syllabus:   "Where a trial court is authorized to grant a new trial for a reason which requires the exercise of a sound discretion, the order granting a new trial may be reversed only upon a showing of abuse of discretion by the trial court."   " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary, or unconscionable. * * * A decision is unreasonable if there is no sound reasoning process that would support that decision. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 553 N.E.2d 597 (1990) * * *." *Bohme v. Bohme*, 2d Dist. Montgomery No. 26021, 2015–Ohio–339, ¶ 11. *Rohde* further provides at syllabus: "Where a new trial is granted by a trial court, for reasons which involve no exercise of discretion but only a decision on a question of law, the order granting a new trial may be reversed upon the basis of a showing that the decision was erroneous as a matter of law."

{¶ 87} BWC asserts that the "Supreme Court of Ohio conclusively holds that a motion to dismiss is a legal question, an appeal from which must employ a de novo standard," citing *Cleveland Elec. Ilum. Co. v. Pub. Util. Comm.*, 76 Ohio St.3d 521, 668 N.E.2d 889 (1996), which involved an appeal which arose from the dismissal by the Public Utilities Commission of Ohio of a complaint filed by the appellant electric utility, the review of which involved a question of law.

{¶ 88}  As noted above, this appeal is not from the trial court's granting of the motion to dismiss/motion for summary judgment, but rather BWC and DPS appeal from the grant of the motion for a new trial, which grant was premised in part upon a question of law, namely whether or not the dismissal of Claim #2 was contrary to law, and in part

upon the "irregularities" in the admission and exclusion of evidence. We will first review de novo the trial court's reconsideration of, and overruling of, the interlocutory entry dismissing the appeal of claim #2.

**{¶ 89}** We initially note that a " 'claim' in a workers' compensation case is the basic or underlying request by an employee to participate in the compensation system because of a specific work-related injury or disease." *Felty*, 65 Ohio St.3d at 239. R.C. 4123.512 allows the "claimant or the employer" to "appeal an order of the industrial commission made under division (E) of section 4123.511 in any injury or occupational disease case * * * ." In *Felty*, the Supreme Court of Ohio noted that the "*only* decisions of the commission that may be appealed to the court of common pleas" under R.C. 4123.512 "are those that are final and that resolve an employee's right to participate in the State Insurance Fund." *Id.*, 238. According to the *Felty* Court, this "narrow rule is consistent with the goal of creating a workers' compensation system that operates largely outside of the courts." *Id.*

**{¶ 90}** We conclude that the trial court erred in determining that the dismissal of claim #2 was contrary to law. Most significant to our determination is the fact that the DHO and the SHO determined in Claim #1 that Thomas failed to prove that she sustained an industrial injury on September 16, 2009, and the IC refused her appeal. At that point, the SHO decision that Thomas did not sustain any injury became a final appealable order.

**{¶ 91}** In *Robinson v. AT&T Network Systems*, 10th Dist. Franklin No. 02AP-807, 2003-Ohio-1513, the Tenth District noted as follows:

> Res judicata operates "to preclude the relitigation of a point of law or
> fact that was at issue in a former action between the same parties and was

passed upon by a court of competent jurisdiction." *Consumers' Counsel v. Pub.Util. Comm.* (1985), 16 Ohio St.3d 9, 10, 475 N.E.2d 782. The doctrine applies to administrative proceedings that are judicial in nature, such as claims before the commission, as they allow each of the parties an ample opportunity to litigate the issues implicated in the dispute. *Set Products, Inc. v. Bainbridge Twp. Bd. Of Zoning Appeals* (1987), 31 Ohio St.3d 260, 263, 510 N.E.2d 373.

Furthermore, once a competent tribunal enters a valid, final judgment on the merits, res judicata acts as a complete bar to any subsequent action that arises from the same transaction or occurrence that was the core of the previous matter litigated by the parties. *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, syllabus. Indeed, it applies to not only those claims and defenses actually litigated in the first dispute, but is conclusive as to any claim that may have been properly adjudicated. *Id.* at 382, 653 N.E.2d 226. *State ex rel. B.O.C. Group v. Indus. Comm.* (1991), 58 Ohio St.3d 199, 200, 569 N.E.2d 496. Therefore, "[t]he doctrine of res judicata requires a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it." *Grava*, supra, at 382, 653 N.E.2d 226, quoting *Natl. Amusements, Inc. v. Springdale* (1990), 53 Ohio St.3d 60,62, 558 N.E.2d 1178.

*Id.*, ¶ 13-14.

**{¶ 92}** We note that in dismissing the FROI in Claim #2, the DHO noted that counsel for Thomas acknowledged "that the only jurisdiction that the court would have at

this juncture for [Claim #1] would include a contusion of left knee and a left foot sprain." As the DHO noted, "in the event that [Claim #1] is eventually allowed, there is nothing that prevents the Injured Worker from requesting an additional condition such as the one requested at this hearing in that claim." In other words, in the event that Thomas prevailed on her appeal of the SHO's determination that she did not sustain an industrial injury on the date of the accident, she could move to amend Claim #1 to include the arthritis condition, which is based upon the same alleged injury, at that time. This conclusion is consistent with the holding in *Ward,* since the IC never considered Thomas' right to participate in the fund for the arthritis claim but rather dismissed the claim in its entirety.

{¶ 93} For the foregoing reasons, BWC's and DPS' third assignments of error are sustained; Claim #2 is not subject to a new trial.

{¶ 94} Finally, we will consider BWC's and DPS' fourth assignments of error together. BWC's fourth assignment of error is as follows:

> THE TRIAL COURT ERRED IN GRANTING A NEW TRIAL AS THERE WERE NO "IRREGULARITIES" THAT PREVENTED THOMAS FROM HAVING A FAIR TRIAL.
>
> 1. The court properly excluded Thomas' cross-examination of Dr. Wunder concerning the Concentra/Dr. Lee diagnoses of contusion of the left knee and sprain of the left foot.
>
> 2. The court properly excluded the Concentra/ Dr. Lee's diagnoses on the FROI submitted to the jury.
>
> 3. The jury properly heard evidence of Thomas' prior knee injuries

including her prior workers' compensation injury to the same body part.

**{¶ 95}** DPS' fourth assignment of error is as follows:

IN THE ABSENCE OF ANY "IRREGULARITIES" PREVENTING A FAIR TRIAL, JUDGE SKELTON ERRED WHEN HE GRANTED A NEW TRIAL.

1. Thomas' cross-examination of Dr. Wunder regarding the hearsay diagnoses was properly excluded.

2. Hearsay diagnoses from Concentra/Dr. Lee were properly redacted from trial exhibits, including the FROI.

3. Evidence regarding Thomas' prior knee injuries was properly submitted to the jury.

**{¶ 96}** As noted above, Civ.R. 59(A)(1) provides for a new trial on the grounds of "[i]rregularity in the proceedings of the court, * * * or prevailing party, or any order of the court, or abuse of discretion, by which the aggrieved party was prevented from having a fair trial." As this Court further noted in *Meyer v. Srivastava*, 141 Ohio App.3d 662, 752 N.E.2d 1011 (2d Dist. 2001), "an irregularity is any matter 'as constitutes a departure from the due, orderly and established mode of proceeding therein, where a party, with no fault on his part, has been deprived of some right or benefit otherwise available to him.' *Sherwin-Williams Co. v. Globe Rutgers Fire Ins. Co.* (1912), 20 Ohio C.C. (N.S.) 151, 154, 31 Ohio C.D. 248, 1912 WL 768." *Meyer*, 667.

**{¶ 97}** We will first address the exclusion of Thomas' cross-examination of Dr. Wunder. Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the

matter asserted." Evid. R. 803 enumerates hearsay exceptions when the declarant is unavailable to testify, including Evid.R. 803(6), which lists:

> A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

**{¶ 98}** The Staff Notes to this rule provide:

> The Ohio rule departs from the Federal Evidence rule by deleting "opinions and diagnoses" as admissible under the section. It is not clear how far present Ohio law permits such evidence to be admitted. In *Hytha v. Schwendeman* (1974), 40 Ohio App.2d 478 [320 N.E.2d 312], the Franklin County Court of Appeals set forth seven criteria for a diagnosis to be admissible when contained in a hospital record. The *Hytha* case may retain validity in so far as it may assist in determining the point at which, in medical records, an act, event or condition admissible under the exception becomes an impermissible opinion or diagnosis under the rule.

**{¶ 99}** As noted by this Court in *Ruth v. Moncrief*, 2d Dist. Montgomery No. 18479, 2001 WL 1346086, * 3-4 (Nov. 2, 2001):

The great weight of authority in Ohio holds that medical opinions and diagnoses are not within the hearsay exception of Evid.R. 803(6). *See, e.g., Meyers v. Hot Bagels Factory, Inc.* (1999), 131 Ohio App.3d 82, 101 (First District); *Hytha v. Schwendeman* (1974), 40 Ohio App.2d 478, syllabus (Tenth District); *Bush v. Burchett* (June 13, 1995), Athens App. No. 94CA2237, unreported, at *3-4 (Fourth District). This court has noted that the admissibility of diagnoses and opinions under Evid.R. 803(6) is unclear and has applied *Hytha* to determine such admissibility. *See Drury v. Jones* (Nov. 14, 1988), Miami App. No. 87-CA-56, at *9. We agree with these cases that medical opinions and diagnoses are not admissible under the Ohio version of Evid.R. 803(6) unless the seven criteria set forth in *Hytha* are present. Under *Hytha*, the following factors must exist before a diagnosis can be admitted:

(1) The record must have been a systematic entry kept in the records of the hospital or physician and made in the regular course of business;

(2) The diagnosis must have been the result of well-known and accepted objective testing and examining practices and procedures which are not of such a technical nature as to require cross-examination;

(3) The diagnosis must not have rested solely upon the subjective complaints of the patient;

(4) The diagnosis must have been made by a qualified person;

(5) The evidence sought to be introduced must be competent and relevant;

(6) If the use of the record is for the purpose of proving the truth of the matter asserted at trial, it must be the product of the party seeking its admission;

(7) It must be properly authenticated.

**{¶ 100}** Below is the relevant unredacted version of Dr. Wunder's report, with the subsequent redactions underlined:

Records from Concentra Medical Center were reviewed. She was seen on September 16, 2009. She reported that one of two females who were horseplaying fell to the floor and hit her left knee and she fell. She had a history of left knee surgery in 1997 and a left knee injury in 2007. With the 2007 injury claim she was off work for three months. She also had requested aggravation of pre-existing osteoarthritis. It was specifically noted that there was no deformity, open wound, swelling or discoloration. She simply had marked diffuse to moderate tenderness over the knee and foot. There was tenderness actually noted over the entire lower leg. The patella was mobile. No bruising or contusion was described. She had limited range of motion of the knee. Range of motion of the toes and ankles was normal. An x-ray of the foot was normal. <u>She was given a diagnosis of "contusion left knee and strain left foot."</u> The FROI was noted. She was seen on September 18, 2009, and complained of severe pain in the left lower extremity. There were no new findings. X-rays of the lower

leg were normal, <u>and a diagnosis of contusion left knee and sprain left foot was given.</u>   She called to state she was going to see her own orthopedic doctor and would not be returning.

**{¶ 101}** On direct examination, Dr. Wunder identified his report, redacted to exclude the diagnoses he noted therein from the Concentra records. He testified to a reasonable degree of medical probability that Thomas did not suffer a contusion or sprain. In the course of the excluded portion of his cross-examination, the following exchange occurred:

Q.   Now, Doctor, page four of your report - -

A.   Um-hum.

Q.   - - You note in the first paragraph a diagnosis of contusion of the left knee and sprain left foot was given - -

A.   Correct.

Q.   - - is that correct?

A.   That is correct.

Q.   And that is the finding that you made on November 10th, 2009?

MS. BACH:   Objection.

THE WITNESS: That's not a finding that I made, no, that's a finding that was noted at Concentra.

Q.   Doctor, is that a statement in your report?

A.   Correct.   It's not a diagnosis I made, though, that's what you said.

**{¶ 102}** On subsequent direct examination by counsel for DPS (also excluded), the

following exchange occurred:

Q. The - - do the redacted portions of this report affect your ultimate conclusion in this case?

A. No, because none of the - -the redacted areas, again, showed any evidence, medical evidence, of the requested conditions.

Q. And, again, Doctor, what is your medical opinion in this case?

A. That there was no contusion to the knee and no sprain.

{¶ 103} Pursuant to *Ruth*, we conclude that the trial court did not err in excluding evidence of the medical diagnoses contained in the Concentra records as inadmissible hearsay. We further conclude that the hearsay diagnoses contained in the FROI were properly excluded for the same reason.

{¶ 104} We further note, however, that in moving the court for a new trial, Thomas asserted, as he does herein, that "Dr. Wunder also included in his report a discussion of other, non-treating experts. For example, Dr. Wunder stated in his report that 'Dr. Freeman did not think her symptoms were due to a left knee contusion or sprain but rather due to non-allowed osteoarthritis.' " The trial court determined that Dr. Wunder's report "included opinions of non-treating physicians," citing *Ruth.* Dr. Wunder's report additionally provides: "A file review by Dr. Andrew Freeman from April 24, 2009, was reviewed. Dr. Freeman did not think that her symptoms were due to a left knee contusion or sprain but rather due to non-allowed left knee osteoarthritis. She was noted to have a chronically painful knee with episodic flare-ups even prior to September 2009." We agree with Thomas that Freeman's diagnosis is inadmissible hearsay not within the exception of Evid.R. 803(6).

{¶ 105} Finally, we will address BWC's and DPS' assertions regarding the admission of evidence of Thomas' 2007 injury and attendant workers' compensation file. Pursuant to Evid.R. 401, relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pursuant to Evid.R. 402, "* * * [e]vidence which is not relevant is not admissible." "[I]t is the trial court's province to determine whether, under the circumstances, testimony is 'essentially misleading or too remote' to be deemed relevant. * * * Trial courts have 'broad discretion in determining relevance * * *." *State v. Yarbrough,* 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 35. Pursuant to Evid.R. 403(A), "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."

{¶ 106} As noted above, on March 5, 2014, DPS supplemented its Trial Materials Exchange after the court's deadline with the "Certified copy of BWC file materials regarding Claim No. 07-373210," page numbers 420 - 668. In her March 17, 2014 objections to the Trial Materials Exchange, Thomas asserted that while "Defendants are free to introduce evidence of prior problems with Plaintiff's left knee, through medical records, it is unfairly prejudicial for them to introduce records discussing Plaintiff's workers' compensation claim. This is not relevant to the issues in this case." Thomas asserted that such "documentation only serves to inflame the prejudice of the jury, by charactering [sic] Plaintiff unfairly as one who repetitively seeks workers' compensation benefits, and also seeks to mislead the jury into believing they should not find the Plaintiff suffered an injury in the course of and arising out of her employment on September 16,

2009," since she already recovered benefits based upon her 2007 injury. In the November 14, 2014 pre-trial email addressing the parties' objections to trial materials, the trial court overruled Thomas' objection.

{¶ 107} At trial, counsel for DPS asked Thomas about her 2007 injury, and counsel for Thomas objected, asserting that the fact that she received workers' compensation benefits for the 2007 injury was irrelevant and prejudicial, and the court overruled the objection. Counsel for Thomas requested and received a continuing objection. Thomas testified that she was injured when two male students were fighting, pinning her between a table and a chalkboard. Thomas identified a "Record of Proceedings" from her 2007 Workers' Compensation file and testified that her 2007 claim was allowed for left knee contusion, and sprain of her left knee and leg.

{¶ 108} In its July 30, 2015 Decision, the court noted that the trial court "allowed defendants to introduce evidence of a prior workers' compensation claim from 2007, overruling the objection that questioning be limited to the injury and not the claim and benefits sought. * * * The Court agrees that this information could have caused the jury to react in a prejudicial manner to Thomas and her claim."

{¶ 109} Both Appellants direct our attention to the Tenth District's decision in *Tonti v. Morrison*, 29 Ohio App.2d 273, 281 N.E.2d 12 (10th Dist. 1971), wherein the court noted, quoting 69 A.L.R.2d 593, as follows:

> * * * "Most of the cases in which the question has been raised have held or recognized that the plaintiff may properly be cross-examined as to his previous injuries, physical condition, claims, or actions for injuries similar to that constituting the basis of the present action, *for the purpose of*

*showing that his present physical condition is not the result of the injury presently sued for*, but was caused wholly or partially, by an earlier injury or preexisting condition. * * *."

{¶ 110} The issue before the trial court was whether or not Thomas was entitled to participate in the BWC's fund for the conditions appealed in Claim #1. We conclude that cross-examination of Thomas as to her 2007 injury was relevant to suggest that her present condition was related to her 2007 injury. We further conclude, however, that the admission of Thomas' entire 2007 workers' compensation file was prejudicial. The file is almost 250 pages in length and contains diagnoses of non-testifying physicians, as well as irrelevant information relating to the benefits that Thomas received, and we agree with the trial court that the voluminous file "could have caused the jury to react in a prejudicial manner to Thomas and her claim."

{¶ 111} For the foregoing reasons, BWC's and DPS' fourth assignments of error are overruled in part and sustained in part; while the trial court properly excluded Thomas' cross-examination of Dr. Wunder regarding the Concentra records as well as the FROI containing the Concentra diagnosis, the court improperly admitted the diagnoses of non-testifying physicians in Dr. Wunder's report and in the 2007 workers' compensation file. We accordingly affirm the trial court's determination that irregularities at trial prevented Thomas from having a fair trial on Claim #1.

{¶ 112} For the foregoing reasons, the judgment of the trial court granting Thomas a new trial on Claim #2 is reversed and vacated; the judgment of the trial court granting Thomas a new trial on Claim #1 is affirmed. The matter is remanded for a new trial on Claim #1.

. . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies mailed to:

Gary D. Plunkett
Rachel D. Siekman
Latawnda N. Moore
David C. Korte
Michelle D. Bach
Joshua R. Lounsbury
Hon. Richard Skelton